Our fourth argument of the morning is in Appeal No. 23-2497, Manuel Antonio Herrera Hernandez v. Theresa Lee and others. Okay, why don't we begin with, yeah, Ms. Petter. Good morning. May it please the Court. Madison Petter on behalf of the appellant, Mr. Hernandez. This Court should reverse the District Court because the District Court improperly granted summary judgment. The District Court granted summary judgment on the grounds that Mr. Hernandez exhausted his administrative remedies or failed to exhaust his administrative remedies. The Prison Litigation Reform Act requires that an inmate exhaust his administrative remedies as available, but Mr. Hernandez did not have available administrative remedies. The District Court failed to analyze whether or not his administrative remedies were available. It ignored undisputed facts that Mr. Hernandez did not receive an inmate handbook in Spanish. Ms. Petter, can I just sub you right there on the Spanish issue? He didn't argue this in his summary judgment papers, okay? So I assume your argument there to get over the forfeiture is that we should look at his declaration where he says that he didn't receive, he speaks limited English and he didn't receive a Spanish pamphlet. Yes. And I suspect that your argument is that we should, if we remanded, we should remand for a PAVI hearing on whether or not he was able to speak English. Yes, and we would ask that this Court remand for a PAVI hearing so we can get into whether or not he received that handbook. And quickly touching on the forfeiture, the District Court in the Document 26 actually told Mr. Hernandez that he didn't have to make legal arguments. It denied Mr. Hernandez's request for counsel and said that, and I quote, the Court is familiar with the law and doesn't need Hernandez to explain the legal basis. But yeah, but that's different, I get that, that's different than the facts though. I mean, in the response to the summary judgment argument, he never said anything about not being able to speak English or not being able to read the pamphlet that he received in English. In other words, in order to get over forfeiture, we would have to draft an opinion or an order that says we're willing to overlook the summary judgment briefing in this case and we're willing to look beyond it to the declaration. Yes. Because that's where it is, right? Yes, it's in Mr. Hernandez's declaration that he says that he did not receive an inmate handbook in Spanish and that he didn't speak or read in English. And the question is, is that enough? Yes, that is enough. That is enough because the legal standard requires that the District Court point to evidence that the administrative remedies were available. In addition to that, it was the burden of the prison officials to prove that the administrative remedies were available and they didn't prove anything besides there was a written procedure. But that's enough. I mean, they certainly don't have to prove in every case. They don't have to submit affirmative evidence that the individual understood English or that the individual could read. Yes. That's too far. Yes, but when there is evidence that he can't understand English and was unaware of the administrative remedy process, then the prison officials have to show that he was given information. See, here's my issue. If what your brief is saying at a very broad level is I don't know why we're in 2025 or 2024 or here 2021 and we have prisons that house lots of Spanish-speaking inmates, why they're not getting Spanish-speaking handbooks. I agree with that. OK, but what I have a hard time with is how does the Spanish-speaking handbook have anything to do with the dispute here? Because I thought the core of the I just view it as it's almost I understand why you why he would care about it on a going forward basis, but I understand his dispute to be. The reason that there was not an additional complaint go in or additional grievance go in is because of what transpired in that first week of November 2021 in connection with my Mr. Hernandez's exchange with Sergeant Teresa. Is it Lee? Yes. I thought that's what the core of the dispute was about, and I don't see how the handbook has even relates to that. That is part of it, but he still doesn't have available administrative remedies during the relevant exhaustion period. The in November because he doesn't have a Spanish-speaking handbook because he was never informed of the administrative remedy process. But that suggests to me that if he had received a Spanish-speaking handbook. That on November 2nd, 3rd, 4th, 5th, that he would have filed some kind of grievance that they would have deemed timely. But I think no, no, no, he he's telling us pretty in pretty articulate terms. The reason I didn't do anything the first week in November is because of what Sergeant Lee told me. Yes, and because Sergeant Lee told him. So if he would have had a Spanish-speaking handbook, he would have ignored her. No, he would not have ignored her. He would have taken what she said and he and he did take what she said to be truthful where she told him he would get his missing legal paperwork. So what's the Spanish-speaking handbook have to do with anything? It's a separate argument from but he's even if Sergeant Lee told him that he still did not have the handbook that informed him of the process. Yeah, I understood the argument with respect to the handbook a little differently. In other words, he's required to argue in order to exhaust. He's required to argue good cause in the prison. He didn't. There's no question he didn't. That's a failure to exhaust. But I took the argument that if he had the handbook, he would have been he would have known that he had to argue good cause. In other words, I understood you to sort of implicitly concede the following. Just because he goes into restricted housing. Sergeant Lee says don't worry, you're going to get the papers when you get out and he says okay. Then he gets out and he files his grievance. But when he files his grievance, his argument is I didn't file the grievance in a timely manner because I had good cause not to based on what Sergeant Lee said. That's something that has to be presented to the prison. He didn't. And so I viewed, I guess I read your brief as a strategic. You have to argue that the administrative remedy was unavailable because he didn't argue good cause below. And that's a problem for him. But Mr. Hernandez wasn't aware of the process. So yes, he did not. Because he didn't have the Spanish sleeping handbook. Well, not even that. But even in the inmate complaint, when you fill out the inmate complaint, it doesn't tell him that he has to argue good cause. But it does say it in the handbook. It does. I looked. Okay. Then yes, it does. The handbook's not in the record. But there's no way that Mr. Hernandez could have known to argue good cause, which is why he didn't argue it. Because he did argue good cause. He has argued good cause all along. He said he may not know those words and I've never understood our exhaustion law to come down to magic words. I think he says, guys, the reason I didn't complain is because of what Sergeant Lee told me about my property. Now, if you all want to call that good cause, call it good cause. But that's my reason for why I didn't complain. Yes, but he doesn't bring that up until the appeal of his rejected inmate complaint. And that's where he explains. When the process starts to turn against him. I guess what? So I'm not arguing against you. I just can't for the life of me figure out what the Spanish-speaking handbook has to do with anything. It has to do with informing him of the administrative remedy process. So did he? Okay. Now I'm confused. Did he or did he not raise the fact that Sergeant Lee told him that his legal papers would be in with his materials at some point during the prison grievance process? Yes, he put it in his appeal and in his informal requests to the property department and Sergeant Lee and Captain Tritt. So he did put it in the appeal to the warden when it was appealed? Yes. Can I ask you about the signed inventory form? Yes. So as I understand it, when he was placed in restrictive housing, he signed this inventory form that states that he received everything, right? Yes. Did he sign that before or after he actually got everything? He had to sign it before he received any property. So why would the prison require him to sign something when he would have no information on whether or not that's true? The record is not clear on that answer. And if there are no further questions, I'm going to reserve the rest of my time for rebuttal. Yeah, of course. No problem. Okay. Let's hear from Mr. Morris. I was going to say good morning. I'll say good afternoon. May it please the court, Michael Morris for the appellees. There's no need for the court to decide whether or not a misstatement was made or whether or not there was a Spanish-speaking handbook provided to him because the question is, did Mr. Hernandez avail himself of his administrative remedies? And here the particular remedy is providing good cause in the complaint and in the complaint appeal to prison staff to explain why he could not meet the filing deadline. And he did not do that. Why would he file a grievance within that 14-day period if a sergeant in the facility said, yeah, the legal paperwork will be coming to you when you get the rest of your property? What would he say? I think she's lying? What would the grievance say? This is what Sergeant Lee told me, but I'm grieving because I think she's lying to me? I think he would say that there was a misstatement made. Here's why I didn't meet that 14-day deadline. Sergeant Lee told me that the legal papers that I'm now missing was put with the rest of my property. And so you should accept this complaint as untimely under the good cause standard because I'm filing as soon as I get out of R.H.U. That substance is what he said. I don't believe that's what he said in his inmate complaint, Your Honor. What he said was, Sergeant Lee told me she put my legal papers with my property. I got out on December the 15th and my papers are missing. And so the inmate complaint goes back and investigates what happened. She sees this complaint or this property receipt that he signs on November the 2nd and says, you signed for legal materials on November the 2nd, so that started your 14-day window. She explains all this in the decision and she cites the good cause rule. So even if at that point he had an opportunity, a remedy under the code in his appeal to say, oh, no, no, no, no, there was this misstatement that was made that led me to believe I'd be getting my property at a later date. He should have said that in his complaint appeal, but he did not. And on the contrary, what he says in his appeal is, I wrote to Sergeant Lee and she never responded. He says nothing about it. Okay, what document are you referring to? I just want to make sure I know what you're talking about. So this is the declaration of Emily Davidson. This is Doc 20. The initial complaint he files is Doc 22, page 15. Hold on. There's these titles on the top of it called Inmate Complaint. Is that what you're talking about? Inmate Complaint is the first grievance. Okay. Okay. She rejects this as untimely, explains the good cause rule, and the receipt. At that point, he's… Oh, I know what you're talking about. You're talking about the one that says Request for Review of Rejected Complaint. Yes, Judge, that's the appeal. So at this point, he had the rationale for the rejected complaint. He had the rule explained to him about good cause and about how it was his burden to explain with evidence, how he couldn't meet that standard. And what he says was, I wrote to Sergeant Lee and never got an answer. Well, what he says is he got out of RHU on December 13th. I realized I didn't have my legal confidential mail on December 15th when they gave me my property. Why isn't that sufficient for good cause? Because he didn't have the information. He didn't know whether or not he had his legal files until December 15th. This is not explaining why he signed for his legal materials per the receipt. It's not giving her any basis to find good cause to accept the untimely complaint because he objectively signed the receipt for legal materials two months before. All he's saying here is, I got out of RHU on December 15th, and I got my property, and my legal mail wasn't in there. And if you look at the last line of the appeal. No, I think what he says, I realized I didn't have my legal mail on December 15th. And can I ask you this, what I raised with Ms. Butter, which is the signing of that acknowledgement form. Do you contest the fact that he was asked to sign that form as a condition of receiving his property when he was in RHU? I don't know when he was asked to sign it. All I know is that he signed the form. I know he claims that. But there's nothing in the record that your client would dispute that. There's nothing to dispute that. But also, even if you have to sign the receipt beforehand, you're going to get that and realize that your quote-unquote crucial legal materials aren't in there. And at that point, you sort of have an obligation, if these are crucial to you, to raise that. And in fact, he says he did here. At the end of this appeal, he says, since I was in RHU, I was asking for those legal mail, and I never got an answer. You have to exhaust all administrative remedies. He should have erred on the side of caution and filed a complaint then. At the very least, when it was presented to him in the decision denying his complaint as untimely, why it was denied, he should have come back in his appeal and explained why the administrative remedy wasn't available or why he could not have met that earlier deadline. And he did not do so. And this court said in the Raggiolli decision that failure to exhaust a good cause argument is failure to exhaust. Unless there are any further questions. I have an unrelated question. You can answer it or not. Have you guys fixed this Spanish-speaking inmate issue? I don't understand, for the life of me, where we're at in time. And Spanish-speaking inmates don't get Spanish-speaking handbooks. Your Honor, I don't believe that that is true. Had that been raised in briefing, we could have presented evidence on that. But let me tell you, I did look into this a little bit in preparing for the argument. And I can represent to the court again, this is outside the record, but all inmates who are sentenced to any confinement time in the Wisconsin Department of Corrections go first to Dodge Correctional. It's an orientation to prison life, prison, where they're given inmate handbooks. If you go on the website, on the very first page, there is an inmate handbook in Spanish right next to it in English. I have a very hard time considering the number of Spanish-speaking inmates who we have in Wisconsin prisons that they're not given a Spanish-speaking inmate handbook when it's on the web page's front page. Okay. All right. Fair enough. If there are no further questions, I thank the panel, and I ask the court to affirm the district court's judgment. Thank you. Thank you, Mr. Morris. I want to clarify that Mr. Hernandez can't exhaust his administrative remedies if they're not available. And they're not available if he doesn't know about them. If Mr. Hernandez knew about the administrative remedies, then he would have had to exhaust between November 2nd and November 16th. But he didn't know about them, and when he got out of the restrictive housing unit, he was informed by a cellmate, which is still not the legal standard or able to meet the legal standard that the prison advised him of the administrative remedies. When he got out, he did try to exhaust, and unfortunately, he was too late. The last thing I would like to discuss is that my colleague on the other side brought up his inmate complaint where he said that he was writing to Sergeant Lee. The clarification is that he wrote to Sergeant Lee in an information request. He still had asked Sergeant Lee in the restrictive housing unit. And I see I'm out of time, so if there are no further questions, I ask that this court reverse. Thank you. Okay. Ms. Fetter, we want to thank you as well. We know that you and your firm took this case on appointment, correct? Yes. We very much appreciate you doing so. We appreciate the quality of your advocacy and what you provided us here today. So thank you. Mr. Morris, again, thanks to you. We'll take the appeal under advisement.